**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION (DAYTON)**

| | | |
|---|---|---|
| CHARLOTTE QUILLEN-SMITH | : | CASE NO. |
| 1087 Marty Lee Lane | | |
| Carlisle, Ohio 45005, | : | |
| Plaintiff | : | |
| vs. | : | |
| U.S. BANK NATIONAL ASSOCIATION, | : | |
| d/b/a U.S. Bank | | |
| 515 E. Central Avenue | : | |
| Miamisburg, Ohio 45342, | | |
| Defendant | | |

_____

**COMPLAINT AND JURY DEMAND**

_____

**<u>INTRODUCTION</u>**

1.  This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended,

    42 U.S.C. §§ 2000 and 2000e et seq. ("Title VII"), including 42 U.S.C. §2000e-3(a), The

    Pregnancy Discrimination Act under Title VII, the Civil Rights Act of 1991, The

    Americans with Disabilities Act under 42 USCS § 12101, and Ohio Rev. Code, including

    §§ 4112.01 to 4112.07, 4112.99 and 4112.02(I), 4101.11, and 4101.12 for hostile work

    environment sexual harassment (federal and state claims) and retaliation (federal and

    state claims) on behalf of Plaintiff, Charlotte Quillen-Smith ("Charlotte"), for complaints

    of and opposing sexual harassment and assisting and/or participating in an investigation

    or proceeding regarding the foregoing complaints (federal and state claims).

## PARTIES, JURISDICTION, AND VENUE

2. Charlotte Quillen-Smith ("Charlotte") is a resident of Carlisle, Warren County, Ohio and is a female, member of a protected class, and was employed by Defendant, U.S. Bank, until she was discharged on March 25, 2019.

3. U.S. Bank maintains a branch office in Miamisburg, Montgomery County, Ohio at which Charlotte was employed.

4. Charlotte was an at-will employee of U.S. Bank within the meaning of Title VII.

5. U.S. Bank directly and by and through their agents, employees and representatives, directly and/or vicariously engaged in a policy, pattern and practice, as is more fully set forth throughout this Complaint, in which U.S. Bank willfully, intentionally, continually and unlawfully sexually harassed, created and maintained a hostile work environment against, retaliated against and wrongfully discharged Charlotte as stated more fully above and below and ratified said actions and inactions. U.S. Bank for the allegations set forth in this Complaint acted with gross negligence and malice and a conscious or reckless indifference or disregard to Charlotte's federally and state protected right to work without unlawful sexual harassment, retaliation, or wrongful termination.

6. This Court has jurisdiction of these claims pursuant to 28 U.S.C. § 1331 because the action arises under the laws of the United States and involves federal questions based on Title VII and 42 USCS § 12101. This Court also has pendent jurisdiction of state law claims pursuant to 28 U.S.C § 1367.

7. Venue lies in this Southern District of Ohio, Western Division, because U.S. Bank is doing business in and Charlotte suffered hostile work environment sexual harassment, retaliation and a wrongful discharge and the claims alleged herein arose in this District.

Furthermore, venue is proper in this District since this is the District and Division in which all and a substantial part of the events or omissions giving rise to the claims occurred. Venue additionally lies in this District because the unlawful employment practices were committed in this judicial district.

8. Ohio is a deferral state which, along with a work sharing agreement between the Equal Employment Opportunity Commission ("EEOC") and the Ohio Civil Rights Commission (OCRC), provides and allows, *inter alia*, a charge of discrimination to be filed within 300 days of a discriminatory act or longer if certain acts are continuous.

9. All jurisdictional and administrative prerequisites have been met, to wit: Charlotte filed a charge of discrimination with the OCRC (a copy of which is attached hereto as Exhibit "A") and dual-filed with the EEOC (a copy of dual filing notice attached hereto as Exhibit "B"). This charge was filed less than three hundred (300) days from the last continuous act of sexual harassment, retaliation and discharge by U.S. Bank against Charlotte.

10. Charlotte filed an Amended Charge with the OCRC on March 26, 2020 alleging disability discrimination (a copy of which is attached as Exhibit "C").

11. The OCRC issued a Notice of Right to Sue on or about July 30, 2020, a true and accurate copy of which is attached hereto as Exhibit "D". This Complaint is being filed within 30 days of Plaintiff's receipt of the same and Charlotte has satisfied the jurisdictional requirements.

## **FACTS**

12. Charlotte was hired by U.S. Bank in May of 2018.

13. Charlotte worked at U.S. Bank for five months without issue.

14. Between May and September of 2018, she wrote her own performance reviews which
    included areas performed well and areas needing more attention moving forward.

15. Charlotte's branch manager, Steve Corder ("Corder"), signed off on Charlotte's reviews,
    and Charlotte never received any negative feedback regarding her reviews or work
    performance.

16. In September of 2018, Charlotte informed Corder that she was pregnant and set to have
    her baby in May of 2019.

17. Corder told Charlotte that her pregnancy was "inconvenient."

18. After Charlotte's disclosure to Corder, he routinely harassed Charlotte by making
    disparaging comments about her becoming pregnant shortly after being hired by U.S.
    Bank.

19. In October of 2018, Charlotte verbally reported Corder's conduct to the district manager,
    Patrick Kelly ("Kelly").

20.  Kelly did not follow up on Charlotte's report, and Corder continued to act as her
    manager and continued to make harassing comments.

21. In November of 2018, Charlotte emailed a human resources ("HR") representative,
    Ashlee Loch, to again report Corder's harassment.

22. Coincidentally, at or about the time that Charlotte reported Corder to HR, U.S. Bank
    began to allege that she failed to follow timekeeping procedures.

23. In December of 2018, HR commenced an investigation into Charlotte's report concerning Corder.

24. As part of HR's investigation, an investigator interviewed Charlotte for approximately 45 minutes regarding her report.

25. Coincidentally at or about the time that HR commenced its investigation, Charlotte received a write-up for her alleged failure to follow timekeeping procedures which U.S. Bank claimed had occurred a month earlier.

26. Charlotte was required to attend bi-monthly OBGYN appointments, as well as additional appointments with a high-risk pregnancy doctor.

27. Charlotte's pregnancy was considered high-risk as Charlotte suffered from hypothyroidism and her unborn daughter had ventricular septal defect ("VSD").

28. If unmonitored, the above conditions increased the risk of preterm labor, high blood pressure, mental retardation, and potential fatality of Charlotte's baby due to the VSD.

29. In December of 2018, Charlotte emailed U.S. Bank the dates and times of her forthcoming pregnancy related medical appointments.

30. In January of 2019, Charlotte received a phone call from HR informing her that its investigation concluded and that her issues with Corder were due to "personality conflicts."

31. Corder continued his harassment including making disparaging comments about her prenatal medical appointments and attempting to prevent her from attending her appointments.

32. On February 5, 2019, Charlotte reminded Corder that she would be taking time off work that day to attend a prenatal doctor's appointment.

33. Corder told her she could not leave because she had failed to give prior notice, despite the fact that she emailed her appointment dates approximately two months prior.

34. Charlotte went to her doctor's appointment, as scheduled, and from there was immediately admitted to the hospital for serious pregnancy related issues.

35. The very next day on February 6, 2019, Corder wrote up Charlotte for allegedly failing to provide notice of her February 5th doctor's appointment.

36. Coincidentally, later in February of 2019, Charlotte was questioned by Ashlee Loch and the district operational manager, Ashlee Whitman, about a transaction they erroneously claimed she made for a family member, which would have violated bank policy.

37. During their interrogation, they asked Charlotte if she completed a transaction for her father.

38. Charlotte informed them that she had not, that her father did not live in Ohio, and that, to her knowledge, none of her family members held accounts with U.S. Bank.

39. Charlotte heard nothing further about the allegation after her discussion with Ashlee Loch and Ashlee Whitman.

40. On March 25, 2019, Charlotte was summarily fired by U.S. Bank.

41. On April 24, 2019, Charlotte received a bill from U.S. Bank for $800.00.

**COUNT ONE: Pregnancy Discrimination - 42 USCS § 2000e(k) (Pregnancy Discrimination Act)**

42. Charlotte restates each and every prior paragraph of this Complaint, as if they were fully restated herein.

43. Charlotte was part of protected class under the Pregnancy Discrimination Act.

44. As a member of a protected class, Charlotte faced adverse employment decisions, such as write-ups and ultimately, termination.

45. Charlotte was qualified for her position at U.S. Bank as evidenced by the lack of any issues with management prior to becoming pregnant and by her positive work reviews, which were overseen by her manager, Corder.

46. Charlotte did not face any adverse action until she disclosed her pregnancy and reported Corder's harassment to higher level management and HR personnel for U.S. Bank.

47. Corder's intentional, unlawful and discriminatory sexual harassment violated the provisions of Title VII and was willful and intentional within the meaning of Title VII.

48. At the time of the above events, Corder was well aware of the provisions of Title VII and knew his conduct was prohibited by Title VII. Corder acted willfully and with reckless disregard of the law in sexually harassing Charlotte.

49. Corder's acts complained of by Charlotte were willful, voluntary and intentional and done knowingly and were engaged in by Corder with knowledge of Title VII, knowledge that his conduct was prohibited by Title VII and in knowing or reckless disregard or indifference of the same and whether his conduct violated Title VII.

50. U.S. Bank is liable on the basis of, inter alia, *respondeat superior* and strict liability or, in the alternative, on the basis of negligence for causing and preventing the foregoing.

51. U.S. Bank, including through U.S. Bank's supervisory employees and agents, who acted at all material times set forth herein within the scope of their employment with U.S. Bank and in furtherance of their business, knew and should have known of the sexual harassment and failed to take all necessary preventive steps and immediate and

appropriate corrective and/or remedial action, which can be construed as condoning and ratifying the sexual harassment, thereby allowing it to continue and escalate.

52. Regardless, U.S. Bank is responsible for their acts and the acts of their agent(s) and supervisory employee(s) with respect to sexual harassment regardless of whether the specific acts complained of were authorized or even forbidden by U.S. Bank and regardless of whether U.S. Bank knew or should have known of their occurrences.

53. U.S. Bank, through their agents, employees and representatives, vicariously engaged in actions and inactions, as is more fully set forth throughout this Complaint, in which U.S. Bank willfully, intentionally, continually and unlawfully engaged in sexual harassment and ratified said actions and inactions, including by ignoring Charlotte's concerns and failing to take timely or appropriate action.

54. For each of U.S. Bank's actions and inactions as set forth in this Complaint, U.S. Bank engaged in the practice with malice, ill will and a willful and conscious disregard of Charlotte's rights that had a great probability of causing and did cause Charlotte substantial harm and a conscious or reckless indifference or disregard to Charlotte's federally protected rights to work without unlawful sexual harassment.

55. As a direct and proximate cause of U.S. Bank's actions, Charlotte has suffered and will continue to suffer damages.

**COUNT TWO: Hostile Work Environment - Title VII of the Civil Rights Act of 1964**

56. Charlotte restates each and every prior paragraph of this Complaint, as if they were fully restated herein.

57. Charlotte is a member of a protected class under Title VII.

58. Charlotte was subjected to unwelcome severe and pervasive sexual harassment when Corder continually made degrading comments by calling her pregnancy "inconvenient" and complaining that she became pregnant shortly after being hired. Further, he attempted to prevent her from attending prenatal doctor's appointments.

59. U.S. Bank's, through its supervisory employees and agents, harassment was based on sex given that Charlotte is female and was pregnant at the time.

60. U.S. Bank's comments created an environment for Charlotte in which no reasonable person could be expected to work, as U.S. Bank's comments were persistent and degrading, and she could not avoid him while at work.

61. Additionally, the environment became hostile for Charlotte when U.S. Bank repeatedly attempted to prevent Charlotte from attending prenatal doctor's appointments, as well as appointments with a high-risk pregnancy specialist.

62. U.S. Bank's misconduct was sufficiently severe and pervasive and affected the terms, conditions and privileges of Charlotte's employment and matters directly and indirectly relating to Charlotte's employment and prevented Charlotte from performing her job, thus altering the terms and conditions of Charlotte's employment and created, along with U.S. Bank's failure to take timely or appropriate corrective action, an intimidating, hostile, offensive and abusive work environment for Charlotte based on Charlotte's gender (female) and unreasonably interfered with her employment and work performance and seriously affected Charlotte's psychological well-being.

63. U.S. Bank failed to take reasonable steps to correct their misconduct on at least two occasions.

9

64. As a direct and proximate cause of U.S. Bank's actions, Charlotte has suffered and will continue to suffer damages.

**COUNT THREE: Retaliation - Title VII of the Civil Rights Act of 1964 (Title VII)**

65. Charlotte restates each and every prior paragraph of this Complaint, as if they were fully restated herein.

66. Charlotte engaged in a protected activity under Title VII when she reported Corder's harassment, which she believed to be unlawful discrimination.

67. U.S. Bank became aware of Charlotte's reports on at least two occasions: 1) when Charlotte reported Corder's misconduct to Kelly, and 2) when she reported Corder's misconduct to Ashlee Loch.

68. Charlotte then received adverse employment action when she was written up for an alleged infraction which U.S. Bank claimed occurred an entire month prior to the write-up (yet, the write-up was issued around the time Charlotte reported Corder to Kelly), when Corder wrote Charlotte up for attending a prenatal doctor's appointment, and when Charlotte was accused of again violating bank policy and was subsequently terminated.

69. The accusations that Charlotte violated bank policies and her ensuing termination occurred shortly after Charlotte reported Corder and shortly after HR concluded its investigation into Charlotte's reports.

70. Given the proximity in time between Charlotte's reports and her adverse employment actions, Charlotte's positive work history prior to her pregnancy, and Corder's disparaging remarks, it is clear that U.S. Bank retaliated against her for reporting Corder's misconduct.

71. U.S. Bank knowingly and willfully retaliated against Charlotte in willful violation of Title VII and they acted with retaliatory animus.

72. Charlotte was treated differently from and less favorably than similarly-situated and comparable employees who did not take part in the above lawful activities.

73. As a result of U.S. Bank's retaliation, including by ignoring Charlotte's complaints, failing to take timely or appropriate corrective action, and fabricating issues against her, Charlotte was terminated under pretext on March 25, 2019.

74. For each of U.S. Bank's actions and inactions as set forth in this Count, U.S. Bank engaged in the retaliatory practice with malice, ill will and a willful and conscious or reckless disregard or indifference to Charlotte's federally protected rights to oppose and complain about unlawful sexual harassment without retaliation that had a great probability of causing and did cause Charlotte substantial harm.

75. As a direct and proximate result of U.S. Bank's willful, unlawful and retaliatory employment policies, actions and practices as set forth above and willful retaliation against Charlotte, in willful violation of Title VII and the laws set forth in this Complaint, Charlotte was caused to and did suffer and has the right to the damages more fully specified below but which include, inter alia, lost income and wages, including past and future salary increases, damages for lost pension, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, retirement benefits, insurance and other fringe benefits, pre and post judgment interest, costs and reasonable attorneys' fees.

**COUNT FOUR: Discrimination - 42 USCS § 12101 (Americans with Disabilities Act)**

76. Charlotte restates each and every prior paragraph of this Complaint, as if they were fully restated herein.

77. Charlotte was protected under the Americans with Disability Act ("ADA") as an individual with a high-risk pregnancy.

78. Charlotte suffered from hypothyroidism associated with her pregnancy and her unborn child had VSD, ventricular septal defect.

79. These conditions required Charlotte to attend additional doctor's appointments with a high-risk pregnancy specialist. If the conditions were left unmonitored Charlotte and her child risked preterm labor, high blood pressure, mental retardation, and/or death.

80. U.S. Bank knew that Charlotte had a high-risk pregnancy because she gave notice of her regular appointments with a high-risk pregnancy specialist.

81. Corder repeatedly attempted to prevent Charlotte from attending her appointments with the high-risk pregnancy specialist, thus failing to accommodate her.

82. Due to Corder's attempts to prevent Charlotte from attending her appointments, she reported his misconduct to U.S. Bank.

83. Shortly thereafter, U.S. Bank falsely accused Charlotte of violating bank policy and terminated her employment.

84. Charlotte was qualified for her position, whether pregnant or not, as evidenced by the lack of any issues with management prior to becoming pregnant and by her positive work reviews, which were overseen by her manager, Corder.

85. The OCRC concluded its investigation on July 30, 2020, and found no probable cause despite evidence to the contrary.

86. As a direct and proximate cause of U.S. Bank's actions, Charlotte has suffered and will continue to suffer damages.

**COUNT FIVE: Discrimination and Retaliation - ORC § 4112.02(A) and (I)**

87. Charlotte restates each and every prior paragraph of this Complaint, as if they were fully restated herein.

88. This Count is for hostile environment sexual harassment and retaliation against U.S. Bank in violation of and is being brought pursuant to Ohio Revised Code Chapter 4112, including §§ 4112.02, 4112.02(A), and 4112.02(I), and 4112.99, and is a state pendent action.

89. After Charlotte informed Corder that she was pregnant, he began to harass her by making comments such as calling her pregnancy "inconvenient," and by attempting to prohibit her from attending pregnancy related doctor's appointments.

90. Then, after Charlotte reported Corder to Kelly and HR, she was falsely accused of violating bank policies and received write ups under pretext.

91. The write-ups occurred shortly after Charlotte reported Corder's misconduct.

92. On March 25, 2019, U.S. Bank fired Charlotte. Similar to the write-ups, Charlotte's termination occurred shortly after HR concluded its investigation into Charlotte's reports regarding Corder.

93. U.S. Bank's harassment was in direct violation of ORC § 4112.02(A) given that Charlotte belonged to a protected class.

94. U.S. Bank's retaliation against Charlotte for reporting Corder's misconduct is in violation of ORC § 4112.02(I).

95.  U.S. Bank's intentional, unlawful and discriminatory sexual harassment of Charlotte violates the provisions of Ohio Rev. Code Chapter 4112, including §§ 4112.02 and 4112.99, and was willful, reckless, malicious and intentional within the meaning of the foregoing statutes, justifying an award of, inter alia, back pay, front pay, benefits and compensatory, punitive and liquidated damages against U.S. Bank.

96.  Charlotte was continually retaliated against by U.S. Bank in retaliation for complaining about and opposing sexual harassment and/or because she assisted and/or participated in an investigation under Ohio Rev. Code Chapter 4112, including §§ 4112.01 to 4112.07, all in violation of Ohio Rev. Code Chapter 4112, including Ohio Rev. Code §§ 4112.02 (I) and 4112.99.

97.  As a direct and proximate result of U.S. Bank's willful, unlawful and discriminatory employment policies, actions and practices as set forth above and willful actions taken against Charlotte because of her sex, female, in willful violation of Ohio Rev. Code Chapter 4112, including §§ 4112.02 and 4112.99, Charlotte was caused to and did suffer the damages more fully specified below but which include, inter alia, lost income and wages, including past and future salary increases, damages for lost pension, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, retirement benefits, insurance and other fringe benefits, liquidated damages, pre and post judgment interest, punitive damages, costs and reasonable attorneys' fees.

98.  As a direct and proximate result of Defendants' actions as set forth above, Plaintiff has suffered the damages and/or has a right to the damages more fully specified above and below and in excess of $25,000.

**COUNT SIX: Wrongful Discharge in Violation of Public Policy - ORC § 4101.11 and § 4101.12**

99. Charlotte restates each and every prior paragraph of this Complaint, as if they were fully restated herein.

100. The State of Ohio has clear public policies prohibiting the above described conduct of U.S. Bank as well as U.S. Bank's retaliatory employment actions against Charlotte, which policies are manifested through the state constitution, statutes, administrative regulations, and/or common law.

101. The State of Ohio has clear public policies against discriminating against an employee on the basis of sex and/or disability under ORC § 4112.02(A).

102. The State of Ohio has clear public policies against an employer retaliating against an employee who reports discrimination under ORC § 4112.02(I).

103. Terminating the employment and livelihood of an employee for bringing to an employer's attention the employer's violation of these clear public policies is of an equally serious nature of wrong as the violation of the laws manifesting the policies.

104. U.S. Bank's actions, as alleged above, place these policies in extreme jeopardy, and allowing U.S. Bank to terminate their employees when they raise concerns over violations or report violations of public policy jeopardizes the public interest in compliance with these policies.

105. U.S. Bank's motivation to terminate Charlotte was directly tied to Charlotte's reporting of the conduct described above.

106. U.S. Bank lacked an overriding and legitimate business justification for terminating Charlotte, and any supposed reason for her termination was pretextual.

107. As the direct and proximate cause of U.S. Bank's wrongful discharge of Charlotte, she has been injured in an amount to be determined at trial, but reasonably expected to exceed $25,000.00.

108. Charlotte exhausted her remedies by filing with the OCRC which found no probable cause despite reliable evidence to the contrary, thus her remedies under ORC § 4112 are inadequate.

## DEMAND FOR RELIEF

**WHEREFORE**, Plaintiff prays for and demands judgment in an amount to be proven at trial and awarded by a jury, but in excess of any and all jurisdictional minimums and, with respect to the pendent state law claims, in excess of Twenty-Five Thousand dollars, as follows:

(a) That this Court award Plaintiff such equitable relief as is proper and an amount to be determined at trial and for a judgment as compensation for the loss of her opportunity and chance to engage in gainful employment, including relief in the form of front pay and future wages, including for the difference in what she was earning, retirement and other benefits and damages, including "black mark" damages;

(b) That this Court award Plaintiff an amount to be determined at trial as compensation for her loss of earnings, adverse health effects, loss of opportunity to engage in gainful employment and future earnings and for humiliation, embarrassment, loss of reputation and loss of self-esteem;

(c) That this Court award Plaintiff an amount to be determined at trial as compensation for lost pension, stock, stock options, bonuses, raises, retirement benefits, insurance, other fringe benefits, retirement benefits available to Plaintiff if she was rehired up to the date

Plaintiff was eligible for full retirement benefits and anything else she would have earned;

(d) That this Court award Plaintiff back wages and pay, including fringe benefits, from the date of the sexual harassment or retaliation through the date of her obtaining employment in a similar position with equal pay and benefits with interest in an amount to be determined at trial;

(e) That this Court award Plaintiff an amount to be determined at trial for Plaintiff's emotional distress, mental anguish, pain and suffering, inconvenience, humiliation, embarrassment, loss of enjoyment of life, and medical expenses incurred as a result of psychological or physical harm;

(f) That this Court award Plaintiff liquidated damages in an amount to be determined at trial, including, but not limited to, double damages;

(g) That this Court award Plaintiff punitive damages in an amount to be determined at trial;

(h) That this Court award Plaintiff prejudgment and post judgment interest in an amount and at a rate to be determined at the time of trial;

(i) That this Court award Plaintiff reasonable and all attorneys' fees, expert witness fees and the costs of this action;

(j) That this Court grant Plaintiff consequential damages and other available compensatory damages not specified herein; and

(k) That this Court grant Plaintiff such other and further legal and equitable relief as may be just and proper.

Respectfully submitted,

Craig T. Matthews and Associates,
*A Legal Professional Association*

/s/ Craig T. Matthews

_____
Craig T. Matthews (0029215)
Attorney for Plaintiff
320 Regency Ridge Drive
Centerville, Ohio 45459
Telephone: (937) 434-9393
Facsimile: (937) 434-9398
Email: cmatthews@ctmlaw.com

## JURY DEMAND

A trial by jury is hereby demanded of the maximum number allowed by law.

/s/ Craig T. Matthews

_____
Craig T. Matthews (0029215)
Attorney for Plaintiff